UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM MORALES, | : |
|    Plaintiff, | : |
| | : |
| v. | : Civil No. 3:17CV1681(AWT) |
| | : |
| NANCY A. BERRYHILL, | : |
| ACTING COMMISSIONER OF SOCIAL | : |
| SECURITY, | : |
|    Defendant. | : |

## ORDER REMANDING CASE

For the reasons set forth below, the decision of the Commissioner is reversed and this case is remanded for additional proceedings consistent with this order.

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

The plaintiff contends that the Administrative Law Judge ("ALJ") erred in the following ways:

> First, the Defendant improperly rejected the opinion of the treating physician Dr. Timell, because it was not based on objective medical evidence of impairment. Secondly, the Defendant weighed the evidence and found in favor of state agency consultants, but failed to follow the regulations in weighing the evidence. Third, the Defendant furthermore found that the Plaintiff's "impairments could reasonably be expected to cause symptoms, but "..[.], the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 27. . . . The last error assigned is that the Defendant arrived at an RFC that did not honor the evidence of impairment because of the errors throughout this decision.

Pl.'s Mot. to Reverse ("ECF No. 17-2") at 5-6.

The defendant argues that the ALJ applied the correct legal standards and that substantial evidence supported the ALJ's Decision. See Def.'s Mot. to Affirm (ECF No. 18, 18-1) at 1 and 13, respectively.

The court concludes that, at minimum, the ALJ failed to properly apply the treating physician rule to Dr. Timell's opinions. This, standing alone, warrants remand.

The ALJ must evaluate "[e]very medical opinion". 20 C.F.R. §§ 404.1527(c), 416.927(c). "Medical opinions" are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, prognosis, and restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Medical opinions from acceptable

2

medical sources are entitled to "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record".  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2))(internal quotation marks omitted).  See also 20 C.F.R. § 416.927(d)(2).

"[I]f controlling weight is not given to the opinions of the treating physician, the ALJ . . . must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02CV103 (WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).  These reasons must be stated explicitly and set forth comprehensively.  See Burgin v. Asture, 348 F. App'x 646, 649 (2d Cir 2009) ("The ALJ's consideration must be explicit in the record."); Tavarez v. Barnhart, 124 F. App'x 48, 49 (2d Cir. 2005) ("We do not hesitate to remand when the Commissioner . . . do[es] not comprehensively set forth reasons for the weight assigned . . . .") (internal quotation marks and citation omitted); Reyes v. Barnhart, 226 F. Supp. 2d 523, 529 (E.D.N.Y.

3

2002)("rigorous and detailed" analysis required). The ALJ's explanation should be supported by the evidence and be specific enough to make clear to the claimant and any subsequent reviewers the reasons and the weight given. See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-2p (applicable but rescinded effective March 27, 2017, after the date of the ALJ's decision).

In determining the amount of weight to give to a medical opinion, the ALJ must consider all of the factors set forth in § 404.1527(c) and § 416.927(c): the examining relationship, the treatment relationship (the length, the frequency of examination, the nature and extent), evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. See Schaal, 134 F.3d at 504 ("all of the factors cited in the regulations" must be considered to avoid legal error).

> [W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or . . . by a paralegal." Perez, 77 F.3d at 47; see also Pratts, 94 F.3d at 37 ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must [] affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'[. . .].") (citations omitted).

Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). See also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118-19 (2d Cir. 1998) (holding that the ALJ should have sought clarifying

4

information sua sponte because the doctor might have been able to provide a supporting medical explanation and clinical findings, that failure to include support did not mean that support did not exist, and that the doctor might have included it had he known that the ALJ would consider it dispositive).

> Gaps in the administrative record warrant remand . . . . Sobolewski v. Apfel, 985 F. Supp. 300, 314 (E.D.N.Y.1997); see Echevarria v. Secretary of Health & Hum. Servs., 685 F.2d 751, 755-56 (2d Cir. 1982). . . .
>
> **The ALJ must request additional information from a treating physician . . . when a medical report** contains a conflict or ambiguity that must be resolved, the report **is missing necessary information**, or the report does not seem to be based on medically acceptable clinical and diagnostic techniques. Id. § 404.1512(e)(1). When "an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and **to develop the administrative record accordingly**," Hartnett, 21 F. Supp. 2d at 221, by **making every reasonable effort to re-contact the treating source for clarification of the reasoning** of the opinion. Taylor v. Astrue, No. 07-CV-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008).

Toribio v. Astrue, No. 06CV6532(NGG), 2009 WL 2366766, at *8-*10 (E.D.N.Y. July 31, 2009)(emphasis added)(holding that the ALJ who rejected the treating physician's opinion because it was broad, "contrary to objective medical evidence and treatment notes as a whole", and inconsistent with the state agency examiner's findings had an affirmative duty to re-contact the treating physician to obtain clarification of his opinion that plaintiff was "totally incapacitated").

5

In determining whether there has been "inadequate development of the record, the issue is whether the missing evidence is significant." Santiago v. Astrue, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37–38 (2d Cir. 1996)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Here, as to Dr. Timell's opinions, the ALJ states:

> The undersigned gave little weight to the opinions expressed by Dr. Timell in September 2015. She stated that the claimant was unable to sit, stand or walk for more than fifteen minutes at a time and stated that he could lift and carry no more than five pounds. This treating source opined that he had limitations on sitting, standing, walking and lifting and carrying due to his inability to bend his neck or raise his arms above shoulder level due to diagnoses of cervical spondylosis, degenerative joint disease of the knees, spinal disorders and degenerative changes in the shoulder joints.
>
> The doctor did not provide a function-by-function assessment [1] and the **physical examination findings and radiographic evidence** in her treatment records and in the overall medical evidence of record **did not support these significant physical limitations**. In fact, she acknowledged in her assessment that the claimant needed more information [2] through imaging. (Exhibit 4F).

---

[1] The plaintiff notes that this requirement applies to the ALJ when formulating an RFC rather than to the treating physician. See ECF No. 17-2 at 14 (citing SSR 96-8p, 1996 WL 374184 at *3 (July 2, 1996)). The court need not address this issue because remand is appropriate on other grounds; however, if the ALJ needed a "function-by-function assessment" of how each diagnosis with its corresponding limitations impacted the plaintiff's ability to work for a proper disability determination, the ALJ had a duty contact Dr. Timell, develop the record and get the needed clarification.

[2] The plaintiff objects to this characterization. See Pl.'s 2d Memo. in Support (ECF No. 20) at 8 ("simply planned more testing"). The court need not resolve the issue because remand is appropriate on other grounds.

6

>    The undersigned gave little weight to the medical source
>    statement submitted by Dr. Timell in May 2016. (Exhibit 6F).
>    The contemporary **medical evidence is mixed**. While there are
>    indications of atrophy and EMG findings of neuropathy, by
>    July 7, 2016 there was a marked improvement in her blood sugar
>    and by September 8, 2016, the claimant was reportedly
>    ambulating normally.[3] (Exhibit 12F, p.p. 46, 55 and 60).
>    *Overall*, the more extreme limitations were **not supported by
>    objective findings** in her treatment records **or** in the overall
>    **medical evidence of record** (Exhibit 6F).

R. at 28-29 (emphasis added). The forgoing language is the entirety of the Decision's analysis as to why little weight is given to Dr. Timell's opinions. Dr. Timell also is mentioned elsewhere in the Step Four analysis:

>    At the hearing, he wore a wrist brace and he was using a cane,
>    which Dr. Timell prescribed for his back and knee pain.
>    . . .
>    The reports from Dr. Timell indicated that the diabetes was
>    poorly controlled and that the peripheral neuropathy in the
>    claimant's feet was related to the longstanding diagnosis.
>    While the claimant complained of bilateral hand pain, which
>    was diagnosed as carpal tunnel syndrome, the condition was
>    treated conservatively with the use of a brace (Exhibits 9F,
>    12F and 14F).[4]

---

[3] This rationale, without more, fails to support the ALJ's conclusion.

>    **Neither a reviewing judge nor the Commissioner is "permitted to substitute
>    his own expertise or view of the medical proof for the treating
>    physician's opinion**," Shaw, 221 F.3d at 134, or indeed for any "competent
>    medical opinion," Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998); see
>    id. (ALJ "is not free to set his own expertise against that of a physician
>    who [submitted an opinion to or] testified before him" **or to "engage[ ]
>    in his own evaluations of the medical findings**" (internal quotation marks
>    omitted)).

Burgess v. Astrue, 537 F.3d 117, 131 (2d Cir. 2008)(emphasis added). Here, it
is not readily apparent that improvement in blood sugar levels and reports of
normal ambulation preclude a finding that the plaintiff's combined
impairments limit his ability to work 8 hours a day, 5 days a week. It is
for treating physicians, and not the ALJ, to make this determination,
especially in a case such as this where the plaintiff has been diagnosed with
multiple conditions.

[4] This rationale, without more, fails to support the ALJ's conclusion.

7

> . . .
> The reports from Dr. Timell well documented the longstanding diabetes mellitus, which was poorly controlled resulting in physical examination findings of bilateral peripheral neuropathy in the lower extremities. Her medical records documented bilateral osteoarthritis of the knees with bilateral anterior cruciate ligament disorders. These records also revealed evidence of cervical and lumbar tenderness along with observations of the claimant's difficulty turning his head from side to side due to bilateral shoulder and raising his arms above shoulder level due to bilateral labral tears revealed on MRI findings in determining the manipulative limitations (Exhibits 12F and 16F).

R. at 27-28 (emphasis added).

The ALJ assigned Dr. Timell's opinions "little weight" primarily because of lack of sufficient support. The record, however, reveals supporting medical evidence that was not properly analyzed. Dr. Timell requested and/or received copies of, at least, the following diagnostic and radiographic tests

---

> **Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen.** See, e.g., Shaw, 221 F.3d at 134 (district court erred in ruling that the treating physician's "recommend[ation of] only conservative physical therapy, hot packs, EMG testing—not surgery or prescription drugs—[w]as substantial evidence that [the claimant] was not physically disabled"). The ALJ and the judge may not "impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.... [A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." Id. at 134–35 (internal quotation marks omitted); see also id. at 134 (Commissioner is not "permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion"). The fact that a patient takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record, such as the opinions of other examining physicians and a negative MRI. See Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir.1995).

Burgess, 537 F.3d at 129 (emphasis added). Here, the Decision's sparse rationale is neither "overwhelmingly compelling" nor explicit and comprehensive enough for meaningful review.

8

and noted that some of these tests supported her opinions (see R. at 380).[5]

On June 25, 2015, a left knee MRI yielded positive findings, including the suggestion of "a partial tear of the distal ACL" and "osteoarthritic changes with osteophyte formation". (R. at 634-35.)

On June 25, 2015, a lumbar spine MRI yielded positive findings, including an endplate fracture and spur, disc protrusion in close contact with a nerve root and significant disc space narrowing and foramen encroachment. (See R. at 632-33.)

On July 23, 2015, bilateral acromioclavicular joint and shoulder x-rays yielded positive findings, including "[b]ilateral widening of the acromioclavicular joints with mild superior subluxation of the clavicular head on the left", "Grade 2 acromioclavicular separation on the left" and "[b]orderline Grade 1 acromioclavicular separation on the right." (R. at 637-38.)

On August 19, 2015, a right shoulder MRI yielded positive findings, including "[r]otator cuff tendinopathy with partial-thickness tears of the supraspinatus, subscapularis and

---

[5] The ALJ should note that the plaintiff sets forth additional supporting medical tests, physical examination findings, and objective data. See ECF No. 17-2 at 7-10.

infraspinatus tendons" and other labral and ligament tears and tendinopathy. (R. at 639-40.)

On August 19, 2015, a left shoulder MRI yielded positive findings, including various tendinopathies and tears, joint separation, ligament injury and a paralabral cyst. (See R. at 495-96.)

On April 19, 2016, electrodiagnostic testing yielded positive findings, including "severe peripheral neuropathy of axonal type affecting bilateral lower extremities most likely due to the patient's longstanding diabetes." (R. at 497-98.)

On October 17, 2016, an EMG yielded abnormal findings, including "electrophysiological evidence of moderate-severe right median nerve dysfunction", "moderate left median nerve disfunction", and "moderate left ulnar nerve dysfunction about the elbow." (R. at 672-75.)

Because the ALJ gave treating physician Timell's opinions "little" rather than controlling weight, he was required to analyze all of the factors in § 404.1527(c) and § 416.927(c), including evidence in support of Dr. Timell's medical opinions. A selective recitation of the record that leaves out evidence that could support a contrary conclusion cannot be the basis for a finding that a decision is supported by substantial evidence. An ALJ cannot "highlight only evidence of plaintiff's improvement . . . while neglecting the overall impact of the

medical record."  Poczciwinski v. Colvin, 158 F. Supp. 3d 169, 176 (W.D.N.Y. 2016).

Before rejecting Dr. Timell's opinion the ALJ had a duty to attempt to fill any clear gaps, to clarify any ambiguities, and to resolve inconsistencies.  If the ALJ believed the evidence was "mixed" or lacked sufficient support, the ALJ had an affirmative duty to develop the record by making every reasonable effort to contact the treating source for clarification and/or additional information, then to analyze the evidence with sufficient specificity to allow a subsequent reviewer to determine how the evidence was mixed and why the evidence in support of and against Dr. Timell's opinions led to the assignment of little weight.  Noting that the "overall" evidence failed to support the "extreme" limitations without more fails to meet the legal standard.

Given the plaintiff's diagnoses and the existence of multiple diagnostic tests with positive findings, Dr. Timell, if asked, might have been able to provide persuasive medical explanations and support for her opinion that the plaintiff was unable to work 8 hours a day, five days a week.  This is significant because it may have produced a different residual functional capacity ("RFC") and a different disability determination.

On remand the ALJ should apply the treating physician rule to Dr. Timell's opinions, fully develop the record, apply the required factors, evaluate all the evidence, and explain the weight given to the opinions with enough specificity to make the reasoning clear to the claimant and to any subsequent reviewers. Also, the ALJ should address the parties' other arguments, including but not limited to applying the correct standard to all medical and treating source opinions and when assessing the claimant's credibility. He should also revise the RFC and disability determination as needed.

For the reasons set forth above, plaintiff's Motion for Order reversing the decision of the Commissioner or in the alternative motion for remand for a hearing (ECF No. 17, 20) is hereby GRANTED as to remand, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 18) is hereby DENIED. This case is hereby REMANDED to the Commissioner for proceedings consistent with this order.

The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the undersigned.

The Clerk shall close this case.

It is so ordered.

Dated this 21st day of February 2019, at Hartford, Connecticut.

> /s/AWT
> Alvin W. Thompson
> United States District Judge